UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM DAVIS and GENEVIEVE
DAVIS,

                              Plaintiffs,

        v.

JP MORGAN CHASE BANK, NA and
PENNYMAC CORP.,

                              Defendants.

---

Case No. 14-CV-6263 (KMK)

OPINION AND ORDER

Appearances:

David M. Schlachter, Esq.
Law Offices of David M. Schlachter, LLC
Passaic, NJ
*Counsel for Plaintiffs*

Simon Chang, Esq.
Morgan Lewis & Bockius, LLP
New York, NY
*Counsel for Defendant JP Morgan Chase Bank, NA*

Ashley S. Miller, Esq.
Akerman LLP
New York, NY
*Counsel for Defendant PennyMac Corp.*

KENNETH M. KARAS, District Judge:

Plaintiffs William Davis and Genevieve Davis ("Plaintiffs") filed the instant Second

Amended Complaint against JP Morgan Chase Bank, NA ("JPM") and PennyMac Corp.

("PennyMac" and collectively with JPM, "Defendants"), asserting claims for wrongful

collection, quiet title, fraud, and wrongful conversion, each in connection with a promissory note

secured by a mortgage on Plaintiffs' Florida property. Both JPM and PennyMac have brought

Motions To Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  (*See* Notice of Mot. To Dismiss the Second Am. Compl. (Dkt.

No. 23); Notice of Mot. To Dismiss the Compl. (Dkt. No. 28).)  For the reasons discussed herein,

Defendants' Motions are granted.

I.  Background

A.  Factual Background

At the outset, the Court notes that Plaintiffs' Second Amended Complaint is disjointed

and difficult to comprehend, both as a whole and with respect to individual allegations.

Accordingly, while the following facts are drawn from the Second Amended Complaint, they are

also supplemented by exhibits attached to Defendants' Motion papers that this Court can

properly consider at this stage.[1]

---

[1] Specifically, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (brackets and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).  Following these principles, the Court considers the underlying Mortgage and county files recording assignments of the Mortgage, which are both clearly referenced in the Second Amended Complaint.  *See Best v. Bank of Am., N.A.*, No. 14-CV-6546, 2015 WL 5124463, at *1 (E.D.N.Y. Sept. 1, 2015) ("Along with its papers, [the defendant] submitted an affidavit attaching the mortgage, note, assignment of mortgage, and other loan documents issued by [the defendant] to [the plaintiff] . . . , [which the court can] consider . . . because the documents are specifically referenced in, and are integral to, the complaint."); *Solomon v. Ocwen Loan Serv., LLC*, No. 12-CV-2856, 2013 WL 1715878, at *4 (E.D.N.Y. Apr. 12, 2013) ("The [n]ote and [m]ortgage are integral to the amended complaint and therefore may be considered by the [c]ourt.").  The Court also considers various state court documents filed in the underlying state foreclosure proceeding.  *See Yencho v. Chase Home Fin. LLC*, No. 14-CV-230, 2015 WL 127721, at *4 (S.D.N.Y. Jan. 8, 2015) (considering

On or about July 26, 2007, Plaintiffs signed a promissory note (the "Note") with Washington Mutual Bank ("Washington Mutual").  (Second Am. Compl. ("SAC") ¶ 15 (Dkt. No. 21); *see also* Decl. of Ashley S. Miller in Supp. of PennyMac Corp.'s Mot. To Dismiss the Compl. ("Miller Decl.") Ex. B ("Mortgage Agreement") (Dkt. No. 24).)  The Note was "for more than $2,000,000," (SAC ¶ 16), and secured by a mortgage on Plaintiffs' Florida property (the "Mortgage"), dated July 26, 2007, (*see* Mortgage Agreement 1–3).[2]

The Note had the following terms:  an initial interest rate of 1.25% that eventually "exploded to 9.95%," a "prepayment penalty," and "Pick-N-Pay" repayment terms which "gave the option of paying back a monthly payment that was less than the interest amount due," meaning that "this loan was an undisclosed negative amortization loan."  (SAC ¶¶ 21–23.) Plaintiffs allege that, at closing, they were not aware that the interest on the Note would "explod[e]" from 1.25% to 9.95% and, if they had been aware, they would not have signed the Note.  (*Id.* ¶¶ 25–27.)  After learning about the 9.95% rate post-closing, Plaintiffs attempted to refinance but could not because Washington Mutual had "artificially appraised the home at higher than actual value so the $2,000,000 loan was already more than 80% of [the] loan to value ratio."  (*Id.* ¶¶ 28–30.)

On February 17, 2012, JPM brought an action to foreclose the Mortgage in Florida state court.  (*See* SAC ¶ 8; Miller Decl. Ex. E.)  JPM was granted a final judgment of foreclosure by order dated April 6, 2014 and entered April 7, 2014.  (*See* SAC ¶ 9; Miller Decl. Ex. H

---

filings in state court foreclosure proceeding); *Solomon*, 2013 WL 1715878, at *4 ("The [c]ourt may . . . take judicial notice of the state-court foreclosure proceedings."); *see also Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." (italics omitted)).

[2] The exact amount of the Note was $2,660,000.  (Mortgage Agreement 2.)

("Foreclosure Judgment").)  The Florida court found that JPM "was the owner and holder of the Note at the time of and prior to the filing of the" foreclosure action.  (Foreclosure Judgment 2.)

The Mortgage was assigned twice on April 18, 2014.  First, it was assigned by the Federal Deposit Insurance Company, acting in its receivership capacity as Receiver of Washington Mutual, to JPM.  (*See* Miller Decl. Ex. C.)  JPM then assigned the Mortgage to PennyMac.  (*See* Miller Decl. Ex. D.)[3]

Plaintiffs allege that, by letter dated March 18, 2014, PennyMac claimed to have the right to the Note as of February 21, 2014, which "would be *prior* to the recorded [a]ssignments" described above.  (SAC ¶¶ 39–40.)  According to Plaintiffs, "[t]here is no recorded assignment that exists giving rights from Washington Mutual to . . . [JPM]," and "the recorded trace of ownership leaves the record clear that it is only Washington Mutual that has the rights to the Note."  (*Id.* ¶¶ 37, 45.)

Apparently concerned with the above discrepancies, Plaintiffs moved in the Florida state court for rehearing and to vacate the final judgment of foreclosure on the grounds that the Note had been sold to PennyMac, and thus JPM no longer owned the Note and Mortgage at the time of the trial.  (*See* Miller Decl. Ex. I.)  The Florida court denied Plaintiffs' motion on May 16, 2014, finding that JPM "had standing at the time the action was filed and had possession of the original [N]ote at trial."  (*See* Miller Decl. Ex. M ("Rehearing Order").)

The property was sold at auction to JPM on May 22, 2014.  (*See* Miller Decl. Exs. N, O.)  The successor and assigns for JPM moved for a writ of possession on June 25, 2014, (*see* Miller

---

[3] The Court cites to the copies of the Official Records Book of the Public Record of Indian River County, Florida, attached to PennyMac's Motion papers, because the allegations pertaining to these assignments in Plaintiffs' Second Amended Complaint, which refer to these records, are incoherent.  For example, Plaintiffs allege that "[o]n or about April 18, 2014 page 272 of the recorder's book, in chronological order, from Defendant Chase to Washington Mutual."  (*See* SAC ¶ 36.)

Decl. Ex. Q), and the Florida state court granted the motion for a writ of possession on

September 15, 2014, (*see* Miller Decl. Ex. S).  Plaintiffs have since been "evicted . . . from their

home."  (SAC ¶ 49.)

B.  Procedural History

Plaintiffs filed the initial Complaint in this Action against JPM on August 7, 2014.  (Dkt.

No. 1.)  On September 23, 2014, Plaintiffs filed the Amended Complaint, adding PennyMac as a

defendant.  (Dkt. No. 4.)  The operative Complaint, the Second Amended Complaint, was filed

by Plaintiffs on March 19, 2015.  (Dkt. No. 21.)  That same day, the Court set a briefing schedule

for Defendants' Motions To Dismiss.  (Dkt. No. 22.)  Pursuant to that schedule, PennyMac filed

its Motion To Dismiss and accompanying papers on April 15, 2015, (Dkt. Nos. 23–25), and JPM

filed its Motion To Dismiss two days later, (Dkt. Nos. 28–30).  Plaintiffs filed their opposition

papers on May 27, 2015.  (Dkt. No. 31.)  PennyMac filed its reply memorandum on June 19,

2015, (Dkt. Nos. 35–36), and JPM filed its reply memorandum on June 26, 2015, (Dkt. No. 37).

II.  Discussion

A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn.

June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also*

*Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same),

*aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept

all factual allegations in the complaint as true, and draw inferences from those allegations in the

light most favorable to the plaintiff."  *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation

marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also N.Y. State Citizens' Coal. for Children v. Carrion*, 31 F. Supp. 3d 512, 516 (E.D.N.Y. 2014) (same), *remanded on other grounds*, — F. App'x —, 2015 WL 6516567 (2d Cir. 2015).  Nevertheless,

"[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2.  Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alterations and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B.  Ripeness

Defendants argue that Plaintiffs' claim for "wrongful collection" is either unripe, (*see*

Mem. of Law in Supp. of Def. PennyMac Corp.'s Mot. To Dismiss the Second Am. Compl.

("PennyMac Mem.") 9–10 (Dkt. No. 25); JPMorgan Chase Bank N.A.'s Mem. of Law in Supp.

of its Mot. To Dismiss the Compl. ("JPM Mem.") 7–8 (Dkt. No. 29)), or moot, (*see* JPMorgan

Chase Bank N.A.'s Reply in Further Supp. of its Mot. To Dismiss the Compl. ("JPM Reply

Mem.") 4–5 (Dkt. No. 37); Reply Mem. of Law in Supp. of Def. PennyMac Corp.'s Mot. To

Dismiss the Second Am. Compl. ("PennyMac Reply Mem.") 4 (Dkt. No. 36)).

The wrongful collection claim seeks damages and asserts that Defendants are "initiating

collection" and are trying to "collect" on the Note.  (SAC ¶¶ 53–54.)  The Second Amended

Complaint also notes that "an entity legitimately holding [Plaintiffs'] debt is able to collect

$1,900,000 from Plaintiffs" in a deficiency proceeding.  (*Id.* ¶ 12.)  Although their allegations are

anything but clear, the most appropriate reading of the claim is that Plaintiffs are challenging

Defendants' *potential* action to collect any deficiency remaining between what Plaintiffs owe on

the Note and the funds brought in through sale of the Florida property.  (*See, e.g.*, SAC ¶ 7

("Florida Law allows deficiency judgments and accordingly, Defendants are alleging their right

to collect on that judgment.").)  However, Plaintiffs fail to allege any actions by Defendants to

obtain a deficiency judgment, and they actually concede that no action has yet been taken.  (*See*

Pls.' Br. in Resp. to Defs.' Mot. To Dismiss ("Pls.' Opp'n"), at unnumbered 12 ("The sale and

marketing of the house will determine if there is a deficiency that one or both of the Defendants

*will then* collect on." (emphasis added)) (Dkt. No. 31).)[4]

_____

[4] The copy of the docket in the foreclosure proceeding as of June 17, 2015, provided by
PennyMac, confirms that there has been no action taken by Defendants to collect any deficiency.

"A claim is not ripe if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks omitted); *see also Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 511 (2d Cir. 2014) (same); *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 234 (E.D.N.Y. 2007) ("[T]he [p]laintiff may not plead a speculative claim that did not exist at the time of the filing of the complaint and as of the present time, still does not exist."). Whether either Defendant ultimately attempts to collect a hypothetical deficiency, and the amount of any damages resulting from that collection, is entirely speculative at this point. Indeed, Defendants point out that the statute of limitations has run on their ability to bring an action to enforce a claim for deficiency and that they have brought no such action, (*see* PennyMac Reply Mem. 4; JPM Reply Mem. 4–5), which renders it even more likely that Plaintiffs' claim depends upon future events that "indeed may not occur at all." *Nat'l Org. for Marriage*, 714 F.3d at 687 (internal quotation marks omitted). Thus, this claim is either unripe or moot. Accordingly, Plaintiffs' claim for wrongful collection is dismissed.

    C. *Rooker-Feldman* Doctrine

Defendants each argue that either some or all of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. (*See* PennyMac Mem. 5–7; JPM Mem. 9–10.)[5] The Court has

---

(*See* Decl. of Ashley S. Miller in Further Supp. of PennyMac Corp.'s Mot. To Dismiss the Compl. ("Miller Reply Decl.") Ex. A (Dkt. No. 35); *see also* Miller Reply Decl. Ex. B.)

    [5] PennyMac argues that the Court lacks subject matter jurisdiction under *Rooker-Feldman* as to all of Plaintiffs' claims. (*See, e.g.*, PennyMac Mem. 7 ("Because [Plaintiffs'] sole purpose in bringing this action is to undo the results of the Florida foreclosure action, this Court lacks jurisdiction to entertain *this case* and it must be dismissed with prejudice." (emphasis added)).) Less clear is JPM's position. JPM argues that *Rooker-Feldman* deprives this Court of jurisdiction over the "Standing Claims," which is defined differently at times. (*Compare* JPM Mem. 10 ("The Standing Claims, Counts Two and Four, should be dismissed."), *with* JPM Reply

considered the applicability of the *Rooker-Feldman* doctrine to Plaintiffs' remaining claims—quiet title, wrongful conversion, and fraud—and finds that, of the three, *Rooker-Feldman* deprives the Court of subject matter jurisdiction over Plaintiffs' quiet title and wrongful conversion claims.

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of N.Y.*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out four conditions that, if met, require the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction:  (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third as 'substantive.'" *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

---

Mem. 3 ("Plaintiffs' Standing Claims, including Count Three[,] . . . are barred by . . . *Rooker-Feldman*."), *and id.* at 5 (referring to "the Standing Claims, i.e., Counts One, Two, and Four").)

### 1.  Procedural Requirements

Here, the two procedural requirements of the *Rooker-Feldman* doctrine are clearly satisfied.  First, as conceded by Plaintiffs, a foreclosure judgment was entered *against* Plaintiffs by a Florida state court on April 7, 2014.  (SAC ¶¶ 8–9.)  Additionally, Plaintiffs' motion for rehearing or to vacate the foreclosure judgment was *denied* on May 16, 2014.  (Rehearing Order.)  Second, Plaintiffs commenced this Action on August 7, 2014, (*see* Dkt. No. 1), four months after the foreclosure judgment was entered and just under three months after Plaintiffs' post-judgment motion was denied.  Thus, Plaintiffs "lost in state court," and "the state-court judgment[s] [were] rendered before the district court proceedings commenced."  *Hoblock*, 422 F.3d at 85 (internal quotation marks omitted).

### 2.  Substantive Requirements

If Plaintiffs' Second Amended Complaint merely "complain[s] of injur[ies]" caused by the state-court foreclosure judgment and seeks this Court's "review and rejection of" that judgment, then Plaintiffs' claims satisfy the substantive requirements of *Rooker-Feldman* and this Court lacks subject matter jurisdiction over them.  *Hoblock*, 422 F.3d at 85; *see also Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013) (same).  The Second Circuit has explained that the requirement that a plaintiff's injuries be caused by the state judgment is the "core requirement" of the *Rooker-Feldman* doctrine. *Hoblock*, 422 F.3d at 87.  Accordingly, *Rooker-Feldman* would not prevent Plaintiffs from "raising federal claims based on the same facts as a prior state case . . . so long as the plaintiff complains of an injury *independent* of an adverse decision."  *Scott*, 2013 WL 1655992, at *3; *see also McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) ("What *Exxon* and *Hoblock* do make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between

a party's state-court and federal-court claims . . . , but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."). Such an "independent claim" is not barred by *Rooker-Feldman*, even if the claim "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (internal quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits." (citing *Exxon*, 544 U.S. at 293)).[6]

This is certainly not the first time that a mortgagor has filed a suit in federal court after a state court issued an adverse foreclosure judgment. Faced with similar suits, "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* [d]octrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (internal quotation marks omitted); *see also, e.g.*, *Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (same); *Campbell v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 11-CV-1588, 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012) (same), *adopted by* 2012 WL 2953967 (S.D.N.Y. July 18, 2012); *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (same). As the Second Circuit has put it, *Rooker-Feldman* precludes a district court from entertaining a suit that "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck*, 773 F.3d at 427. The Court will individually consider whether each of Plaintiffs' remaining claims satisfies the substantive requirements of the *Rooker-Feldman* doctrine.

---

[6] "The subsequent federal suit could, of course, be barred by ordinary preclusion principles." *Hoblock*, 422 F.3d at 88 n.6.

### a.  Quiet Title

The Court finds that Plaintiffs' quiet title claim (Count Two) is barred by *Rooker-Feldman*.  Plaintiffs' claim for quiet title undeniably complains of, and seeks to have remedied, the state foreclosure judgment.  Indeed, "[t]his is evident from the relief [Plaintiff] requests—title to and tender of his property."  *Vossbrinck*, 773 F.3d at 427; *see also Riley v. Comm'r of Fin.*, 618 F. App'x 16, 17 (2d Cir. 2015) (summary order) ("[A]n action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by *Rooker-Feldman*."); *Barbato*, 2016 WL 158588, at *3 (finding *Rooker-Feldman* barred claims where "the relief that [the] [p]laintiffs seek—quiet title and return of their property—would require th[e] [c]ourt to 'review the state proceedings and determine that the foreclosure judgment was issued in error.'" (quoting *Vossbrinck*, 773 F.3d at 427)); *Quiroz v. U.S Bank Nat'l Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *6 (E.D.N.Y. May 16, 2011) ("Requesting restoration of title to [the] plaintiffs and a rescission of the mortgage essentially asks this court to vacate [the state judgment] in violation of *Rooker-Feldman*."), *adopted by* 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).  (*See also* SAC Prayer for Relief (asking the Court to "quiet[] title against Defendants . . . [and] [r]eturn[] possession of the property to Plaintiff[s]").)  Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' quiet title claim.

### b.  Wrongful Conversion

It is equally clear that addressing Plaintiffs' "wrongful conversion," claim (Count Four) "would require [this Court] to review the state proceedings and determine that the foreclosure judgment was in error."  *Vossbrinck*, 773 F.3d at 427.  Indeed, Plaintiffs' allegations in support of the claim reveal that the injuries they seek to have remedied were "caused by [the] state-court judgment."  *Hoblock*, 422 F.3d at 85 (internal quotation marks omitted).  Specifically, Plaintiffs

allege that JPM wrongfully "did use the [c]ourt system in Florida to foreclose and possess the subject property." (SAC ¶ 74.) But by resting their claim on the allegation that JPM "did not possess the Note" entitling it to foreclose, (*id.* ¶ 76), Plaintiffs "seek to review and reject the judgment of foreclosure" on the grounds that JPM "had no right to the property at issue in the foreclosure proceeding," which impermissibly "implicate[s] the validity of the state[-]court judgment of foreclosure," *Graham v. Select Portfolio Servicing, Inc.*, — F. Supp. 3d —, 2016 WL 215237, at *5 (S.D.N.Y. Jan. 18, 2016) (citing *Vossbrinck*, 773 F.3d at 427). Although Plaintiffs have asked for, in part, damages to compensate for the "wrongful conversion," (*see* SAC Count Four), it remains "abundantly clear that the whole purpose of this [claim] is to stop and undo the foreclosure judgment," *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).[7]

---

[7] The Court recognizes there are courts in the Second Circuit that have held that a conversion claim based on allegations that the defendant procured the foreclosure judgment through fraud is not barred by *Rooker-Feldman*. *See, e.g.*, *Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149, 2012 WL 6827477, at *4 (E.D.N.Y. Dec. 6, 2012) (holding that the plaintiff's conversion claim, while it denied a legal conclusion reached by the state court, was premised on the plaintiff's allegations that the defendant procured the foreclosure judgment illegally through fraudulent tactics and thus was not barred by *Rooker-Feldman*); *Goddard v. Citibank, NA*, No. 04-CV-5317, 2006 WL 842925, at *4–5 (E.D.N.Y. Mar. 27, 2006) (conversion claim was "independent from the state court judgment[] because [the plaintiffs] allege fraud in the procurement of the judgment, independent from the barred claim that the state court issued an incorrect decision regarding the law or the evidence presented to it" (italics omitted)); *see also Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (summary order) ("[The] plaintiffs' suit is not barred by *Rooker-Feldman* because the [complaint] seeks damages for injuries suffered as a result of [the] defendants' alleged fraud and does not attempt to reverse or undo a state court judgment.").

At first glance, Plaintiffs' wrongful conversion allegations do contain language hinting at fraud, alleging that JPM "prosecuted the foreclosure . . . knowing[] that it did not possess the Note." (SAC ¶¶ 75–76.) However, Plaintiffs cannot argue that the foreclosure judgment was procured through JPM's allegedly fraudulent withholding of this fact, because Plaintiffs put this *exact* fact directly before the Florida state court when they filed their motion for rehearing and to vacate the judgment of foreclosure, (*see* Miller Decl. Ex. I, at 1 (arguing that an attached letter "clearly indicate[d] [JPM] did not own the note and mortgage on the date of trial and that [JPM] committed a fraud upon the [c]ourt by indicating otherwise")), and that court was unmoved, (*see*

c.  Fraud

The Court finds that Plaintiffs' fraud claim (Count Three), is not barred by *Rooker-Feldman*.  According to the Second Amended Complaint, Defendants are liable for fraud because they repeatedly sent Plaintiffs collection notices and letters and also called Plaintiffs several times daily "to induce Plaintiffs to pay money to Defendant[s]," despite knowing that they did not possess "true, legal title to the collection on the subject Note."  (SAC ¶¶ 68–71.)  Thus, the fraud claim complains of injuries allegedly caused by Defendants that are wholly apart from the state court's foreclosure judgment.  Additionally, to the extent that Plaintiffs' Second Amended Complaint can be read to allege fraud in the origination of the loan, (*see, e.g.*, *id.* ¶¶ 21–30), any injury from that conduct "existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings."  *McKithen*, 481 F.3d at 98.

Accordingly, *Rooker-Feldman* deprives the Court of subject matter jurisdiction over Plaintiffs' claims for quiet title and wrongful conversion, but not Plaintiffs' fraud claim.

D.  Collateral Estoppel

Even if the Court possessed subject matter jurisdiction over Plaintiff's wrongful collection, quiet title, or wrongful conversion claims, those claims would still fail because they are barred by collateral estoppel.

Collateral estoppel bars relitigation of an issue where the "identical issue has been litigated between the parties or their privies."  *Gentile v. Bander*, 718 So.2d 781, 783 (Fla. 1998)

---

Rehearing Order (denying the motion for rehearing and to vacate the judgment and reiterating its earlier ruling that JPM "had standing at the time the action was filed and had possession of the original note at trial")).  Accordingly, Plaintiffs do not seek damages suffered as a result of Defendants' alleged fraud, but rather they seek damages suffered as a result of the Florida state court's decision rejecting Plaintiffs' fraud-based argument.

(internal quotation marks omitted).[8]  Under Florida law, "[t]he essential elements of collateral estoppel are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Yencho v. Chase Home Fin. LLC*, No. 14-CV-230, 2015 WL 127721, at *4 (S.D.N.Y. Jan. 8, 2015) (quoting *Weiss v. Courshon*, 768 So.2d 2, 4 (Fla. Dist. Ct. App. 2000)).

The gravamen of each of Plaintiffs' claims boils down to their insistence that "the recorded trace of ownership" demonstrates that "it is only Washington Mutual that has the rights to the Note" and thus JPM did not have standing to prosecute the foreclosure action.  (SAC ¶ 45; *see also id.* ¶¶ 52–54 (in context of wrongful collection claim, alleging that the Note "is only with Washington Mutual . . . or the FDIC" and that "Defendants are trying to enforce [their] rights, which do not exist[,] to collect on [the] Note"); *id.* ¶¶ 60–66 (in context of quiet title claim, challenging chain of ownership over the Note before the foreclosure action, including alleging that "[i]t is not possible that the same Note . . . [was] assigned from [JPM] to Penny[M]ac and from [JPM] to Washington Mutual"); *id.* ¶ 76 (in context of wrongful conversion claim, alleging that JPM prosecuted the foreclosure action "knowing[] that it did not possess the Note").)[9]  However, in a proceeding between Plaintiffs and JPM, the Florida state court already considered the identical issue—namely, the chain of ownership over the Note and whether JPM had standing to foreclose as a holder of the Note—and determined that JPM "was

---

[8] The Court must give the Florida rulings the same preclusive effect a Florida court would.  *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1170 (2d Cir. 1993) (affording New Jersey proceedings the full faith and credit they would garner in New Jersey courts).

[9] Additionally, Plaintiffs' fraud claim, which will be discussed further below, to the extent it is premised on the theory that "Defendants knew or should have known [they did] not possess true, legal title to the collection on the subject Note," (SAC ¶ 68), would likewise be barred by collateral estoppel.

the owner and holder of the Note at the time of and prior to filing of the complaint [in the foreclosure action]." (Foreclosure Judgment 2.)[10]  And upon Plaintiffs' motion for rehearing and to vacate the foreclosure judgment, the Florida court once again found that JPM "had standing at the time the action was filed and had possession of the original [N]ote" and denied Plaintiffs' motion.  (Rehearing Order.)[11]  Because each claim listed above rests on the already-litigated and already-rejected premise that JPM did not have standing to pursue the foreclosure proceeding, Plaintiffs' claims fail.[12]

### E. Fraud Claim

Remaining for the Court's consideration is Plaintiffs' fraud claim (Count Three).  While the Court has subject matter jurisdiction over the claim, it suffers from a number of defects and must be dismissed.  The Court begins by noting that, consistent with the Second Amended Complaint as a whole, the exact contours of Plaintiffs' fraud claim are hard to discern.

The totality of the allegations underlying Plaintiffs' fraud claim is that "Defendants knew or should have known [they did] not possess true, legal title to the collection on the subject Note," but that they continued to send notices and letters to collect and called Plaintiffs several

---

[10] Indeed, the Florida court had to decide the issue, because "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose."  *McLean v. JP Morgan Chase Bank Nat. Ass'n*, 79 So.3d 170, 173 (Dist. Ct. App. Fla. 2012).

[11] It bears noting that the *only* issue that Plaintiffs pressed in that motion, which was rejected by the Florida state court, is essentially identical to the factual underpinning of their wrongful conversion claim.  (*Compare* Miller Decl. Ex. I, at 1 ("The letter clearly indicates [JPM] did not own the note and mortgage on the date of trial and that [JPM] committed a fraud upon the Court by indicating otherwise."), *with* SAC ¶ 76 ("[JPM] [prosecuted the foreclosure] recklessly or knowing[] that it did not possess the Note . . . .").)

[12] While PennyMac was not a party to the foreclosure proceedings, "[o]ne party may be said to be a privy of another whenever there is a mutual or successive relationship to the same right."  *Cook v. State*, 921 So.2d 631, 635 (Dist. Ct. App. Fla. 2005) (internal quotation marks omitted).

times a day anyway, "to try to induce Plaintiff[s] to pay money to Defendant[s]."  (*See* SAC

¶¶ 68–71.)  "Allegations of fraud are subject to a heightened pleading standard," *Nakahata v.*

*N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013); *see also* Fed. R. Civ.

P. 9(b), and a plaintiff must "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent," *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir.

2004) (internal quotation marks omitted); *see also Nakahata*, 723 F.3d at 197 (same).  Plaintiffs'

vague allegations alluding to notices, letters, and calls cannot satisfy this standard.[13]  Beyond

that, Plaintiffs do not allege facts that establish the elements of common law fraud under either

Florida or New York law because Plaintiffs fail to allege that they suffered any injury as a result

of Defendants' allegedly fraudulent calls and letters aimed at inducing Plaintiffs to pay money to

the Defendants.  *See Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 881 F. Supp. 2d 556, 563

(S.D.N.Y. 2012) (explaining that New York law requires that a fraud plaintiff rely on a

misrepresentation "to his . . . economic detriment"), *aff'd*, 525 F. App'x 12 (2d Cir. 2013); *Butler*

*v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (noting that an element of fraudulent misrepresentation

under Florida Law is an "injury by the party acting in reliance on the representation" (emphasis

---

[13] Plaintiffs attempt to save their fraud claim by arguing that "[t]he Barbato[s'] claim for action to Fraud and other remedies is pleaded with requisite particularity."  (Pls.' Opp'n, at unnumbered 10.)  The Court chooses not take a position on that issue, primarily because the Barbatos are a different client represented by Plaintiffs' attorney in a different matter.  *See Barbato*, 2016 WL 158588, at *1.

omitted)).[14]   Indeed, Plaintiffs do not allege that, relying on those calls and notices, they made

any payments to Defendants.[15]

---

[14] PennyMac contends that any common law fraud claim, if alleged, would be subject to
Florida law because, in torts cases, New York courts apply the law of the jurisdiction with the
greatest interest in the litigation.  (PennyMac Mem. 10 n.4.)  The Court need not determine
whether New York or Florida law applies because the result is the same in any event.

[15] Plaintiffs also allege that they were "promised a 1.25% interest only loan" but instead
were given "an exploding rate loan that went to 9.95% negative amortization," about which they
found out "post-closing."  (SAC ¶¶ 25–29.)  Plaintiffs allege that if they "knew this they would
never have undertaken the loan."  (Id. ¶ 27.)  While Plaintiffs incorporate all allegations in the
Second Amended Complaint into their fraud claim, (see id. ¶ 67), their actual allegations in that
count do not reference the terms of the loan at all, (see id. ¶¶ 68–72).

Even if the Court construed the fraud claim as including a fraudulent inducement claim,
the claim would be barred by res judicata.  Under Florida law, "[f]or res judicata to apply, there
must be (1) an identity of the 'thing' sued for; (2) an identity of the cause of action; (3) an
identity of the parties to the action; and (4) an identity of the quality or capacity of the persons
for or against which the claim is made."  Nivia v. Nationstar Mortg., LLC, No. 13-CV-24080,
2014 WL 4146889, at *4 (S.D. Fla. Aug. 21, 2014) (internal quotation marks omitted); see also
Tyson v. Viacom, Inc., 890 So.2d 1205, 1209 (Dist. Ct. App. Fla. 2005) (same).  Here, there is an
identity of the "thing" sued for because "[t]he same loan transaction, mortgage, and residential
property that are at issue here were the subject matter of the [s]tate [f]oreclosure action."  Beepot
v. J.P. Morgan Chase Nat. Corporate Servs., Inc., 57 F. Supp. 3d 1358, 1371 (M.D. Fla. 2014);
see also Nivia, 2014 WL 4146889, at *4 (same).  There is an identity of the cause of action
because "in some, if not all, cases, fraud in the inducement of a note or mortgage is a compulsory
counterclaim to an action in foreclosure on the note or mortgage," Norris v. Paps, 615 So.2d
735, 737 (Dist. Ct. App. Fla. 1993); see also Martinez v. Bank of Am. Corp., No. 14-CV-21467,
2014 WL 2735668, at *3–4 (S.D. Fla. June 16, 2014) (finding that claims "challenging
origination of [the plaintiff's] loan" were barred by res judicata because "those claims [were]
compulsory counterclaims that were required to be asserted in the [s]tate [f]oreclosure [a]ction");
accord Gurdon v. Doral Bank, No. 15-CV-5674, 2016 WL 721019, at *8–9 (S.D.N.Y. Feb. 23,
2016) (report and recommendation) ("Courts have concluded that allegations of fraud in an
underlying mortgage agreement are barred by res judicata, as the proper time to raise those
claims was in the state foreclosure proceeding." (italics omitted)), and when considering the
identity of the cause of action, courts "look[] not only at the causes of action actually raised in
the first suit, but also at every other matter which the parties might have litigated and had
determined, within the issues as framed by the pleadings or as incident to or essentially
connected with the subject matter of the first litigation," Beepot, 57 F. Supp. 3d at 1372
(alterations and internal quotation marks omitted).  There is an identity of parties because
Plaintiffs and JPM were the parties in the state foreclosure action.  Additionally, because
PennyMac was assigned the Mortgage from Chase, the preclusive effect of the foreclosure action
extends to PennyMac.  See Martinez, 2014 WL 2735668, at *4 (noting that the foreclosure
judgment "extended to" the defendants for res judicata purposes because the defendants and the

Plaintiffs also state that by the actions described above, "Defendants violated the Fair Debt Collection Practice[s] Act," (the "FDCPA").  (SAC ¶ 72.)  This cursory reference is the full extent of Plaintiffs' discussion of the FDCPA either in their pleadings or their opposition papers. Indeed, "they fail to cite to any provision or subsection of the Act, leaving the Court and Defendant[s] to speculate as to the bases for their claims.  Such vague pleadings, while perhaps permissible if Plaintiffs were proceeding pro se, fail to meet the plausibility standard required under *Twombly* and *Iqbal*."  *Barbato*, 2016 WL 158588, at *4 (some italics omitted).

Even if Plaintiffs did raise a claim under the FDCPA, they fail to adequately state such a claim.  "To state a FDCPA claim, a plaintiff must show that:  (1) [he or] she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (internal quotation marks omitted); *see also Campbell*, 2012 WL 2952852, at *10 (same).  The Act defines a "debt collector" as persons "who regularly collect[] . . . debts owed or due."  15 U.S.C. § 1692a.  "In contrast, a 'creditor' is a 'person who offers or extends credit creating a debt,' but 'does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.'"  *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 1692a(4)).  "Creditors generally are not subject to the FDCPA, unless the creditor[,] in the process of collecting his own debts, uses any name other

---

party who received the foreclosure judgment "shared similar interests in the foreclosure action as successive holders of the [n]ote"); *see also Symonette v. Aurora Loan Servs., LLC*, — F. App'x —, 2015 WL 7144369, at *2 (11th Cir. Nov. 15, 2015) (per curiam) (finding that one defendant was in privity with the defendant that brought the foreclosure action "by virtue of its assignment of the mortgage").  Finally, there can be no dispute that the quality and capacity of the parties involved are the same in both suits.

than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* (alterations, citation, and internal quotation marks omitted). The Second Amended Complaint "lacks any allegations asserting that Defendant[s] [are] debt collector[s] within the meaning of the FDCPA," as there are no allegations that Defendants are "entit[ies] who regularly collect[,] or attempt[] to collect[,] the debts owed to another, or use[] a name other than [their] own to collect [their] debts." *Barbato*, 2016 WL 158588, at *4; *see also Campbell*, 2012 WL 2952852, at *10–11 (same).

Additionally, while the FDCPA prohibits conduct that "harass[es], oppress[es], or abuse[s]," debtors, and prohibits making any "false, deceptive, or misleading representation[s]," *see* 15 U.S.C. §§ 1692d, 1692e, and Plaintiffs' allegations regarding Defendants' alleged communications with Plaintiffs could very generously be read to invoke these prohibitions, the allegations are incredibly vague and do not even state who sent the letters/notices or made the calls, what they said, and what about them was harassing, oppressive, false, or misleading, *see, e.g.*, *Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 472 (S.D.N.Y. 2013) (dismissing FDCPA claims where the complaint "ma[de] conclusory and formulaic allegations that two plaintiffs received harassing calls and mailings," and "one allegation fail[ed] to state who made the harassing communications, or what they were about"); *Franke v. Global Credit & Collection Corp.*, No. 10-CV-1535, 2010 WL 4449373, at *2 (D. Conn. Nov. 1, 2010) (dismissing the plaintiff's FDCPA claims where the complaint was "bare of any specific facts" that would support a claim that a letter "contained false, deceptive[,] or misleading representations"); *Sembler v. Attention Funding Trust*, No. 07-CV-2883049, 2009 WL 2883049, at *2 (E.D.N.Y. Sept. 3, 2009) (dismissing FDCPA claims where the plaintiff merely alleged that communications contained "threats and warnings" and were "abusive and insulting" because the

"content or nature of the 'threats'" was not alleged, and the allegation that communications were "abusive and insulting" was "simply too vague and conclusory").

For the above reasons, Plaintiffs' fraud and FDCPA claims fail and are dismissed.

F.  Unjust Enrichment

Plaintiffs argue in their opposition papers that they "made out a cause of action for unjust enrichment."  (*See* Pls.' Opp'n, at unnumbered 9–10.)  However, such a claim does not appear within the four counts listed in their Second Amended Complaint.  While the counts incorporate previous allegations, unjust enrichment is mentioned only once in the previous allegations, and "such a cursory reference to a potential claim does not survive even a generous Federal Rule of Civil Procedure 8(a)(2) analysis."  *Barbato*, 2016 WL 158588, at *5; *see also Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("[A] memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint." (internal quotation marks omitted)).  Even if the Court found that Plaintiffs had asserted an unjust enrichment claim, the Court would lack subject matter jurisdiction over the claim.  To the extent Plaintiffs allege that Defendants were unjustly enriched by way of any delinquency judgment, as discussed above, that claim is unripe or moot.  If, instead, Plaintiffs allege Defendants were unjustly enriched as a result of the foreclosure judgement, that claim would be barred by *Rooker-Feldman*.

23

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motions To Dismiss the

Second Amended Complaint in their entirety, with prejudice.[16]  The Clerk of Court is

respectfully requested to terminate the pending Motions, (Dkt. Nos. 23, 28), and close this case.

SO ORDERED.

DATED:      March 30 , 2016
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[16] "[A]s [P]laintiff has already amended his complaint twice, dismissal with prejudice is appropriate at this stage in the litigation." *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011).

24